UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Dahniya Robinson,<br><br>Plaintiff,<br><br>-against-<br><br>American Express National Bank; Trans Union LLC a/k/a TransUnion; Experian Information Solutions, Inc.; Equifax Information Services LLC,<br><br>Defendants. | Civil Action<br>Case No.: 2:26-cv-05279<br><br>**COMPLAINT** |

Plaintiff Dahniya Robinson ("Plaintiff"), by and through her attorneys, Petroff Amshen LLP, as and for her complaint against the defendants (collectively, "Defendants") named herein, hereby alleges as follows upon personal knowledge, upon review of the public record, and otherwise upon information and belief:

1. Plaintiff brings this action against Trans Union LLC a/k/a TransUnion ("TransUnion"), Experian Information Solutions, Inc. ("Experian"), and Equifax Information Services LLC ("Equifax") (collectively, the "CRAs"), and American Express National Bank ("AMEX"), arising from their willful and negligent violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq.

## PARTIES

2. Plaintiff is an individual resident of the State of New York, residing in Suffolk County, and is a "consumer" as defined by 15 U.S.C. § 1681a(c).

3. AMEX is a national banking association and is a "person" and a "furnisher" of information to consumer reporting agencies as defined by and subject to the FCRA, including the duties enumerated under 15 U.S.C. § 1681s-2.

4. TransUnion is a Delaware limited liability company, and is a "consumer reporting agency," as defined by and subject to 15 U.S.C. §§ 1681a(f) and 1681a(p).

5. Experian is an Ohio corporation, with its principal place of business in Costa Mesa, California, and is a "consumer reporting agency," as defined by and subject to 15 U.S.C. §§ 1681a(f) and 1681a(p).

6. Equifax is a Georgia limited liability company, with its principal place of business in Atlanta, Georgia, and is a "consumer reporting agency," as defined by and subject to 15 U.S.C. §§ 1681a(f) and 1681a(p).

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as Plaintiff's claims arise under federal law.

8. This Court has personal jurisdiction over each Defendant pursuant to Federal Rule of Civil Procedure 4(k)(1)(A) and New York Civil Practice Law and Rules ("CPLR") §§ 301 and 302, and the exercise of jurisdiction is consistent with the Due Process Clause of the Fourteenth Amendment.

9. AMEX transacts business within the State of New York within the meaning of CPLR § 302(a)(1). AMEX markets and offers consumer financial products and services to New York residents, solicits and accepts New York consumers as customers, extends credit to and maintains accounts for New York consumers, and derives revenue from its business with New York consumers.

10. As part of that business, AMEX regularly furnishes information concerning New York consumers to the national consumer reporting agencies, including TransUnion, Experian, and Equifax, for inclusion in consumer reports. AMEX does so knowing that those reports are

requested by, disseminated to, and relied upon by creditors, lenders, landlords, and other users located in New York. By furnishing such information, AMEX purposefully avails itself of the privilege of conducting activities in New York and invokes the benefits and protections of its laws.

11. Plaintiff transmitted her dispute, together with her identification and FTC Identity Theft Report, to the CRAs from New York, and that submission identified Plaintiff as a consumer residing in New York. Upon information and belief, upon the CRAs' forwarding of notice of the dispute to AMEX, AMEX knew, or had reason to know, that Plaintiff was a New York consumer and that the disputed account appeared on the consumer report of a New York resident.

12. With knowledge that Plaintiff was a New York consumer, AMEX continued to furnish information concerning the AMEX Account into Plaintiff's consumer file, knowing that the information would be disseminated to and relied upon by users in New York and that the resulting harm would be suffered by Plaintiff in New York. Plaintiff's claims against AMEX arise directly from that New York-directed conduct.

13. Because the AMEX Account was opened through identity theft and was never the product of any bona fide transaction by Plaintiff, the records reflecting the opening and activity of the account are within AMEX's possession, custody, and control.

14. TransUnion is registered to do business in New York and receives service of process in New York through its registered agent, The Prentice-Hall Corporation System, Inc., 80 State Street, Albany, New York. TransUnion prepares and sells consumer reports concerning New York residents to users in New York, and prepared, sold, or disseminated consumer reports concerning Plaintiff to users in New York.

15. Experian is registered to do business in New York and maintains a registered agent for service of process in New York, CT Corporation System, 28 Liberty Street, New York, New

York. Experian prepared, sold, or disseminated consumer reports concerning Plaintiff to users in New York.

16. Equifax is registered to do business in New York and receives service of process in New York through its registered agent, Corporation Service Company, 80 State Street, Albany, New York. Equifax prepares and sells consumer reports concerning New York residents to users in New York, and prepared, sold, or disseminated consumer reports concerning Plaintiff to users in New York.

17. Each CRA directed its reinvestigation of Plaintiff's dispute, and its handling of Plaintiff's identity-theft block request, at the consumer file of a New York resident. Plaintiff's claims against the CRAs under 15 U.S.C. §§ 1681i, 1681e(b), and 1681c-2 arise directly from that New York-directed conduct.

18. In the alternative, and to the extent any Defendant's conduct is found to have occurred outside New York, this Court has personal jurisdiction over that Defendant under CPLR § 302(a)(3). Each such Defendant committed a tortious act outside New York, namely, its violations of the FCRA concerning Plaintiff, that caused injury to Plaintiff in New York; each regularly does or solicits business in New York, engages in a persistent course of conduct in New York, or derives substantial revenue from New York consumers; and each expected or should reasonably have expected its acts to have consequences in New York while deriving substantial revenue from interstate commerce.

19. The exercise of personal jurisdiction over each Defendant comports with due process and traditional notions of fair play and substantial justice. New York has a strong interest in protecting its residents from inaccurate credit reporting; each Defendant conducts business with

New York consumers and would face no undue burden in defending in this forum; and Plaintiff has a substantial interest in obtaining relief in the State where she resides and suffered her injuries.

20. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District, including the dissemination of and reliance upon Plaintiff's consumer reports in this District and the harm suffered by Plaintiff in this District.

## STATEMENT OF FACTS

21. Plaintiff is a victim of identity theft.

22. On July 10, 2025, an account was opened with American Express National Bank in Plaintiff's name and using Plaintiff's Social Security number, without Plaintiff's knowledge, consent, or authorization (Account No. 0153XXXX) (the "AMEX Account").

23. Plaintiff never applied for, authorized, opened, used, or benefited from the AMEX Account.

24. On August 11, 2025, Plaintiff discovered the AMEX Account after enrolling in a consumer credit monitoring service.

25. On January 14, 2026, Plaintiff filed an FTC Identity Theft Report, Report No. 196186833, identifying the AMEX Account as a credit card account opened by an identity thief.

26. On January 15 and January 16, 2026, initial fraud alerts were placed in Plaintiff's consumer files maintained by Equifax and Experian, respectively.

27. On June 22, 2026, Plaintiff obtained a tri-bureau consumer report reflecting the AMEX Account. TransUnion and Experian each reported the AMEX Account with a balance of $3,315.00, and Equifax reported the AMEX Account with a balance of $0.00. Each of the CRAs reported the AMEX Account with a payment status of current and with no amount past due.

28. On June 25, 2026, Plaintiff transmitted a comprehensive written dispute package to each of the CRAs.

29. The dispute package included a formal dispute letter identifying the AMEX Account and demanding that it be blocked and removed from Plaintiff's credit file, a copy of Plaintiff's personal identification, a copy of Plaintiff's FTC Identity Theft Report No. 196186833, and a copy of Plaintiff's consumer report reflecting the disputed account. The dispute package identified Plaintiff as a consumer residing in New York.

30. Upon receipt of Plaintiff's dispute, pursuant to 15 U.S.C. § 1681i(a)(2), each of the CRAs was required to provide notification of the dispute to AMEX, as the furnisher of the disputed information, before the expiration of the five (5) business day period beginning on the date of receipt of Plaintiff's dispute, and to include with that notification all relevant information regarding the dispute received from Plaintiff.

31. Upon receipt of the notice of dispute forwarded by the CRAs, AMEX was required to conduct a reasonable investigation with respect to the disputed information and to report the results of its investigation to the CRAs, pursuant to 15 U.S.C. § 1681s-2(b).

32. Pursuant to 15 U.S.C. § 1681c-2(a), upon receipt of Plaintiff's identification, her FTC Identity Theft Report, her identification of the AMEX Account as information resulting from identity theft, and her statement that the account does not relate to any transaction by her, the CRAs were required to block the reporting of any information in Plaintiff's file that Plaintiff identified as information resulting from an alleged identity theft, no later than four (4) business days after the date of receipt by such agency.

33. Upon information and belief, the CRAs forwarded notice of Plaintiff's dispute to AMEX. Equifax thereafter annotated the AMEX Account to reflect that it was disputed by the

consumer, reporting narrative code 022, "Consumer Disputes - Reinvestigation in Process," in the reporting period ending June 2026, and narrative code 166, "Consumer Disputes This Account Information." Neither notation appeared on the report Plaintiff obtained on June 22, 2026. TransUnion likewise annotated the AMEX Account with remark code AID, "Account information disputed by consumer," which appears in the reporting periods for May, June, and July 2026 on the TransUnion consumer report Plaintiff obtained on August 7, 2026.

34. On July 7, 2026, AMEX transmitted three separate written communications to Plaintiff concerning the AMEX Account, each bearing the same account reference and the same dispute reference number.

35. In the first communication, AMEX acknowledged receipt of Plaintiff's request for documents and stated that it was "unable to process the request as the required information below has not been received," conditioning its response upon Plaintiff's production of "an enlarged copy of a government issued photo identification card" and "a copy of a police report evidencing the claim of theft of identity." Plaintiff had reported the identity theft to the Suffolk County Police Department, which assigned Central Complaint No. 26012020360, and Plaintiff provided AMEX with the departmental record reflecting that complaint.

36. In the second communication, AMEX stated that Plaintiff's inquiry "is under investigation by the U.S. Fraud Department" and that AMEX would "notify you in writing upon completion."

37. In the third communication, AMEX stated that it had "reviewed our records" and was "unable to accept your claim since we have determined you did apply for this account."

38. Each of the three communications bears the same date and the same account reference. AMEX thus told Plaintiff, in a single day's mail, that it needed more documents before it could act, that its review remained open, and that its review was closed and her claim rejected.

39. AMEX conducted no reasonable investigation of Plaintiff's dispute. AMEX produced no application, signature, electronic record, or other documentation supporting the opening of the AMEX Account, and it declined Plaintiff's claim without producing the records on which it stated it relied.

40. Upon information and belief, an AMEX representative acknowledged to Plaintiff that the telephone number AMEX was calling in connection with the AMEX Account was not the number associated with that account in AMEX's records.

41. On August 7, 2026, Plaintiff obtained post-dispute consumer reports from each of the CRAs. The AMEX Account continued to be reported by TransUnion, Experian, and Equifax.

42. The post-dispute reporting of the AMEX Account was materially worse than the reporting Plaintiff had disputed. TransUnion reported the AMEX Account under the heading "Accounts with Adverse Information," with a balance of $3,510.00, a pay status of "Account 30 Days Past Due Date," and an amount past due of $17.00. Experian reported the AMEX Account as "Potentially Negative," with a balance of $3,510.00 and a status of "Closed. $17 past due as of Jul 2026," and reported a thirty (30) day delinquency for July 2026 and an amount past due of $17.00, neither of which appeared on the report Plaintiff disputed. Equifax reported the AMEX Account with a balance of $3,423.00.

43. The AMEX Account was reported as closed on December 8, 2025, and was reported with a credit limit of $0.00. Notwithstanding the closure of the account and the absence of any available credit, the reported balance rose after Plaintiff's dispute: the balance TransUnion

and Experian each reported increased from $3,315.00 to $3,510.00, and the balance Equifax reported increased from $0.00 to $3,423.00. An amount past due first appeared in July 2026.

44. TransUnion reports that the AMEX Account will remain on Plaintiff's consumer file until on or about April 2033.

45. As a direct and proximate result of the continued inaccurate reporting of the AMEX Account, Plaintiff has suffered harm to her creditworthiness and financial reputation. Every user who obtains her consumer report sees a fraudulent account carrying a growing balance, a past-due amount, and a record of delinquency.

46. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered emotional distress, including anxiety, depression, sleep disturbance, embarrassment, fear, anger, frustration, strain on her personal relationships, and physical symptoms, each of which Plaintiff identified in the written dispute she transmitted to the CRAs on June 25, 2026. On the days AMEX telephoned Plaintiff or sent her mail denying her dispute, she remained awake for hours researching what further proof she could assemble to show that she had never applied for or authorized the AMEX Account. Plaintiff has lived with a chronic gastrointestinal condition since childhood, and the sustained stress of AMEX's repeated refusals aggravated that condition and interrupted the course of treatment she had been pursuing. Plaintiff has incurred approximately $78.00 in laboratory expense, exclusive of copay, in order to resume treatment, and anticipates further charges for an initial specialist consultation.

47. Plaintiff's distress was compounded by the manner in which AMEX responded to her. For approximately five months before she filed her FTC Identity Theft Report on January 14, 2026, Plaintiff was, as she stated in that sworn report, "on and off the phone with AMEX regarding this account," and AMEX employees repeatedly told her they would send her links by which she

could upload documents to verify her identity, which never arrived. Prior to July 7, 2026, an AMEX representative told Plaintiff by telephone that AMEX would not remove the account because its systems contained photographs of Plaintiff that AMEX contended proved she had opened it. Plaintiff has never photographed herself for AMEX and has never been shown the images AMEX claims to hold.

48. Each of the CRAs prepared and disseminated consumer reports containing the AMEX Account to third-party users who requested Plaintiff's consumer report. The TransUnion consumer report Plaintiff obtained on August 7, 2026 records that TransUnion disclosed Plaintiff's consumer information to Discover Card on July 19, 2026 and again on July 30, 2026, and to Capital One on November 27, 2025. Each of those disclosures occurred while the AMEX Account was reported in Plaintiff's TransUnion file, and the July 2026 disclosures occurred after Plaintiff's June 25, 2026 dispute and while TransUnion was reporting the account as thirty days past due. Each CRA maintains a record of the additional users to whom it disclosed a consumer report concerning Plaintiff during the period the AMEX Account was reported, and those records are within each CRA's possession, custody, and control.

49. Plaintiff incurred out-of-pocket expense pursuing the correction of the AMEX Account. In order to obtain the tri-bureau consumer report needed to identify and dispute the fraudulent account, Plaintiff purchased an Identity IQ credit monitoring subscription, paying an initial charge of $1.00 and a further charge of $19.99 thereafter. As of June 25, 2026, Plaintiff had spent more than twenty (20) hours attempting to resolve the fraudulent account, and she has continued to expend time doing so since that date.

50. Upon information and belief, AMEX's collection personnel telephoned Plaintiff about the balance on the AMEX Account after she had told AMEX that the account was fraudulent

and not hers, and continued to do so while her disputes and AMEX's own investigation were pending. Plaintiff is presently completing onboarding for new employment, and a background check on her is pending. Because the AMEX Account continues to be reported as a delinquent obligation, Plaintiff faces the imminent prospect that a consumer report containing the fraudulent account will be furnished to and relied upon by her prospective employer.

## CAUSES OF ACTION

### COUNT I: Willful Noncompliance With the FCRA Against AMEX (Violations of 15 U.S.C. § 1681s-2(b))

51. Plaintiff incorporates by reference each of the preceding paragraphs.

52. Upon information and belief, AMEX received notice of Plaintiff's dispute from the CRAs.

53. AMEX reported the AMEX Account as Plaintiff's obligation despite Plaintiff never having applied for, authorized, or benefited from that account.

54. AMEX failed to conduct a reasonable investigation with respect to the disputed information, failed to review all relevant information forwarded by the CRAs, failed to report the results of any investigation to the CRAs, and failed to modify, delete, or permanently block the reporting of the AMEX Account, as required by 15 U.S.C. § 1681s-2(b)(1)(A), (B), (C), and (E).

55. AMEX had reasonable cause to believe the information was inaccurate based on its own lack of documentation for the opening of the account, its own inability to produce the records on which it stated it relied in rejecting her claim, and the notice of Plaintiff's dispute forwarded by the CRAs.

56. After receiving notice of Plaintiff's dispute from the CRAs, AMEX continued to furnish information concerning the AMEX Account to the CRAs, and did so in a materially more

derogatory form than before the dispute, despite knowing or having reasonable cause to believe that such information resulted from identity theft and was therefore inaccurate.

57. Had AMEX conducted a reasonable investigation, the result would have been different. The application, signature, electronic, device, and transaction records for the AMEX Account are within AMEX's possession, custody, and control, and a reasonably prudent furnisher reviewing those records against Plaintiff's sworn FTC Identity Theft Report would have determined that Plaintiff did not apply for, open, or use the AMEX Account and that the information AMEX furnished was inaccurate.

58. AMEX's conduct was willful. AMEX acted with knowledge of its obligations under the FCRA and in reckless disregard of Plaintiff's rights and of the accuracy of what it reported.

59. Upon information and belief, AMEX's rejection of Plaintiff's claim reflects a practice of adhering to its own prior determination that an account is valid without regard to the identity-theft documentation the consumer submits to the consumer reporting agencies. AMEX rejected Plaintiff's claim on the same day it told her that its review remained open, which is not the product of any inquiry into the records it holds.

60. This willfulness is evidenced by AMEX's failure to produce any documentation supporting the opening of the AMEX Account; by its demand for a police report notwithstanding its receipt of Plaintiff's sworn FTC Identity Theft Report; by its representation to Plaintiff on a single day, under a single dispute reference number, both that its review remained open and that its review was concluded; and by its continued furnishing of the AMEX Account in an increasingly derogatory posture after notice of the dispute, including a balance that rose on a closed account carrying no available credit and a past-due amount that first appeared after the dispute.

**COUNT II: Negligent Noncompliance With the FCRA Against AMEX**
**(Violations of 15 U.S.C. § 1681s-2(b))**

61. Plaintiff incorporates by reference each of the preceding paragraphs.

62. AMEX's conduct constituted negligent noncompliance as a furnisher of information, thereby violating its duties under 15 U.S.C. § 1681s-2(b).

63. AMEX failed to exercise reasonable care in its information-furnishing practices and in its investigation of Plaintiff's dispute, thereby breaching the duties it owed Plaintiff under the FCRA.

**COUNT III: Willful Noncompliance With the FCRA Against the CRAs**
**(Failure to Conduct Reasonable Reinvestigation: Violation of 15 U.S.C. § 1681i)**

64. Plaintiff incorporates by reference each of the preceding paragraphs.

65. The CRAs each received Plaintiff's dispute of the AMEX Account, which appeared on the consumer report each of them maintained and sold.

66. Pursuant to 15 U.S.C. § 1681i(a), upon receipt of Plaintiff's dispute, the CRAs were required to conduct a reasonable reinvestigation to determine the accuracy of the disputed information and record the current status of the disputed information, or delete the item from the file, within thirty (30) days of receiving the dispute.

67. The CRAs failed to conduct a reasonable reinvestigation of Plaintiff's dispute.

68. Upon information and belief, each of the CRAs did nothing more than transmit a coded summary of Plaintiff's dispute to AMEX and adopt whatever response AMEX returned. No CRA reviewed the FTC Identity Theft Report, the identification, or the consumer report that Plaintiff submitted, and no CRA made any independent inquiry into whether Plaintiff had opened the account.

69. The CRAs failed to delete or correct the inaccurate information, or to accurately record the status of the disputed information concerning the AMEX Account.

70. Following the reinvestigation, the AMEX Account was reported in a materially more derogatory form than before the dispute, including a balance that increased on a closed account carrying no available credit, a past-due amount that had not previously been reported, and a thirty (30) day delinquency for July 2026 that had not previously appeared. A reinvestigation that produces new derogatory information on a disputed account, rather than verifying or deleting the item, is not a reasonable reinvestigation.

71. The CRAs reported the AMEX Account inconsistently among themselves following the reinvestigation. These inconsistencies demonstrate the failure of each to conduct a reasonable reinvestigation.

72. The CRAs' failure to perform a reasonable reinvestigation after receiving Plaintiff's comprehensive dispute and accompanying documentation of identity theft was willful. The CRAs acted with knowledge of their statutory duties or in reckless disregard of those duties and Plaintiff's rights.

**COUNT IV: Negligent Noncompliance With the FCRA Against the CRAs**
**(Failure to Conduct Reasonable Reinvestigation: Violation of 15 U.S.C. § 1681i)**

73. Plaintiff incorporates by reference each of the preceding paragraphs.

74. The CRAs' conduct constituted negligent noncompliance with their duty to conduct a reasonable reinvestigation of disputed information under 15 U.S.C. § 1681i(a).

75. The CRAs failed to exercise reasonable care in their reinvestigation process concerning Plaintiff's dispute of the AMEX Account.

**COUNT V: Willful Noncompliance With the FCRA Against the CRAs**
**(Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy: Violation of 15 U.S.C. § 1681e(b))**

76. Plaintiff incorporates by reference each of the preceding paragraphs.

77. Pursuant to 15 U.S.C. § 1681e(b), whenever a consumer reporting agency prepares a consumer report, it must follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.

78. The reporting of the AMEX Account was inaccurate. It was patently incorrect, because Plaintiff never applied for, opened, used, or benefited from the account. It was also misleading in such a way and to such an extent that it can be expected to have an adverse effect on credit decisions, because it presented Plaintiff to every user of her consumer report as the obligor on a delinquent debt with a rising balance. Whether Plaintiff applied for, opened, or used the AMEX Account is a question of fact that is objectively and readily verifiable from the application, signature, device, and transaction records maintained by AMEX. The inaccuracy Plaintiff identifies does not depend on the resolution of any unsettled question of law.

79. Each of the CRAs was on notice that Plaintiff was a victim of identity theft. Initial fraud alerts were placed in the consumer files Equifax and Experian each maintained on Plaintiff on January 15 and January 16, 2026, respectively. The TransUnion consumer report Plaintiff obtained on August 7, 2026 likewise carries an initial fraud alert, stating that action may be required under the FCRA before opening or modifying an account and directing that Plaintiff be contacted at (631) 303-8582. Each CRA nevertheless continued to report the AMEX Account, and none had procedures adequate to identify a tradeline opened in the name of a consumer who had placed a fraud alert as the possible product of identity theft.

80. Four features of the CRAs' reporting demonstrate their failure to adhere to this statutory mandate. First, the AMEX Account remained on Plaintiff's consumer reports even after she submitted a dispute package that included FTC Identity Theft Report No. 196186833. Second, the CRAs reported a rising balance and a new past-due amount on an account they simultaneously

reported as closed and carrying no available credit. Third, the three agencies reported the same account inconsistently with one another. Fourth, Equifax reported the AMEX Account with a status of "Pays As Agreed" while simultaneously reporting, on the same page of the same report, a thirty (30) day delinquency for February 2026, a sixty (60) day delinquency for March 2026, an activity designator of "Closed," narrative code 065, "Account Closed By Credit Grantor," and a balance of $3,423.00 against a credit limit of $0.00.

81. The CRAs' failure to establish or follow such reasonable procedures was willful, representing a knowing failure to comply with their statutory duties or a reckless disregard for the accuracy of the information they compile and disseminate about Plaintiff.

**COUNT VI: Negligent Noncompliance With the FCRA Against the CRAs**
**(Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy: Violation of 15 U.S.C. § 1681e(b))**

82. Plaintiff incorporates by reference each of the preceding paragraphs.

83. The CRAs' conduct constituted negligent noncompliance with their duty to follow reasonable procedures to assure maximum possible accuracy of information in their consumer reports under 15 U.S.C. § 1681e(b).

84. The CRAs failed to exercise reasonable care in preparing Plaintiff's consumer reports and in assuring their accuracy.

**COUNT VII: Willful Noncompliance With the FCRA Against the CRAs**
**(Failure to Block Identity Theft Information: Violation of 15 U.S.C. § 1681c-2)**

85. Plaintiff incorporates by reference each of the preceding paragraphs.

86. Pursuant to 15 U.S.C. § 1681c-2(a), a consumer reporting agency must block the reporting of any information in the file of a consumer that the consumer identifies as information that resulted from an alleged identity theft, no later than four (4) business days after the date of receipt by such agency of: (1) appropriate proof of the identity of the consumer; (2) a copy of an

identity theft report; (3) the identification of such information by the consumer; and (4) a statement by the consumer that the information does not relate to any transaction by the consumer.

87. Plaintiff provided the CRAs with all necessary items for an identity theft block under 15 U.S.C. § 1681c-2(a) via her dispute submission transmitted on June 25, 2026, including appropriate proof of her identity, FTC Identity Theft Report No. 196186833, her identification of the AMEX Account as information resulting from identity theft, and her statement that the account does not relate to any transaction by her.

88. FTC Identity Theft Report No. 196186833 alleges an identity theft, is a copy of an official, valid report filed by Plaintiff with the Federal Trade Commission, and subjects Plaintiff to criminal penalties for the filing of false information. It is therefore an "identity theft report" within the meaning of 15 U.S.C. § 1681a(q)(4).

89. The CRAs willfully failed to timely block the reporting of the AMEX Account within four (4) business days of their receipt of Plaintiff's complete request and documentation.

90. Alternatively, if the CRAs did implement a block, they willfully rescinded that block without notice to Plaintiff and without a valid basis, as the AMEX Account continued to appear on Plaintiff's consumer reports.

91. No CRA notified Plaintiff that it had determined, under 15 U.S.C. § 1681c-2(c)(1), that the block was requested in error, that the information was blocked in error, that the block was requested on the basis of a material misrepresentation of fact by Plaintiff, or that Plaintiff had obtained possession of goods, services, or money as a result of the blocked transaction. Where a block is declined or rescinded, 15 U.S.C. § 1681c-2(c)(2) requires that the affected consumer be notified promptly, in the same manner as consumers are notified of the reinsertion of information

under 15 U.S.C. § 1681i(a)(5)(B). No CRA so notified Plaintiff. Nor did any CRA request any additional information or documentation from Plaintiff in connection with her block request.

92. The CRAs' failure to block, or their improper rescission of a block, was willful, demonstrating a knowing or reckless disregard for their obligations under 15 U.S.C. § 1681c-2.

**COUNT VIII: Negligent Noncompliance With the FCRA Against the CRAs (Failure to Block Identity Theft Information: Violation of 15 U.S.C. § 1681c-2)**

93. Plaintiff incorporates by reference each of the preceding paragraphs.

94. The CRAs' conduct constituted negligent noncompliance with their duties to block the reporting of information resulting from identity theft under 15 U.S.C. § 1681c-2.

95. The CRAs failed to exercise reasonable care in implementing or maintaining the required block on information related to the AMEX Account.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests that this Court enter judgment in her favor and against the Defendants, jointly and severally where appropriate, for the following:

I. Actual damages in an amount to be determined at trial, including but not limited to compensation for damage to creditworthiness and reputation, financial burden, and emotional distress, pursuant to 15 U.S.C. §§ 1681n(a)(1)(A) and 1681o(a)(1);

II. In the alternative to actual damages on Plaintiff's willfulness claims, statutory damages of not less than $100 and not more than $1,000, as permitted under 15 U.S.C. § 1681n(a)(1)(A);

III. Punitive damages in an amount to be determined at trial as may be allowed under 15 U.S.C. § 1681n(a)(2) for the willful and reckless violations of the FCRA;

IV. Reasonable attorneys' fees and costs incurred in prosecuting this action, pursuant to 15 U.S.C. §§ 1681n(a)(3) and 1681o(a)(2);

V. Pre-judgment and post-judgment interest as allowed by law; and

VI. Such other and further relief as this Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff requests a trial by jury on all issues so triable.

Dated: Brooklyn, New York
August 26, 2026

**PETROFF AMSHEN LLP**
*Attorneys for Plaintiff,*
Dahniya Robinson

*/s/ Serge F. Petroff*
Serge F. Petroff, Esq.
1795 Coney Island Avenue, Third Floor
Brooklyn, New York 11230
Telephone: (718) 336-4200
Email: spetroff@petroffamshen.com